IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION

MARIA DEL CARMEN VERA, RAYMOND
G. FLORES, FRANCES AGUILAR, ANGELA
MYERS, ROBERT ROSS, MARIA COCA,
MARTHA ROBLES, THOMAS ELLIS, MABLE
HARDAWAY, JOSE CAMPOS, BEATRICE
ESCALANTE, ELEANOR VARGAS, CECILIA
RODRIGUEZ, ANNA JEFFRIES, JOSE
QUINONES, DIANNE I. GARCIA, SYLVIA
CAMACHO, ASCENCION DOMINGUEZ,
FELIPA GARCIA, AURORA GONZALEZ,
MAXIMILIANO PEREZ ON BEHALF OF
THE ESTATE OF MARGARITA PEREZ,
MARIA MUTZ, AND DOROTHY COOK,

  Plaintiffs,

v.

PARKE-DAVIS, A DIVISION OF THE
WARNER-LAMBERT COMPANY;
WARNER-LAMBERT COMPANY;
PFIZER, INC.; SANKYO PHARMA,
INC.; AND SANKYO PARKE-DAVIS

  Defendants.

United States District Court
Southern District of Texas
FILED
MAY 2 9 2003
Michael N. Milby
Clerk of Court

No. B-03-098

## PLAINTIFFS' ORIGINAL PETITION

COMES NOW Plaintiffs in the above-styled and numbered cause, by and through their attorneys of record, and file this their Original Petition against the Defendants and in support thereof would show unto the Court the following:

1.  Plaintiffs are as follows:

  a.  Plaintiff Maria Del Carmen Vera is an adult resident citizen of Cameron County, Texas.

  b.  Plaintiff Raymond G. Flores is an adult resident citizen of Bexar County, Texas.

c. Plaintiff Frances Aguilar is an adult resident citizen of Bexar County, Texas.

d. Plaintiff Angela Myers is an adult resident citizen of Bexar County, Texas.

e. Plaintiff Robert Ross is an adult resident citizen of Bexar County, Texas.

f. Plaintiff Maria Coca is an adult resident citizen of Bexar County, Texas.

g. Plaintiff Martha Robles is an adult resident citizen of Cameron County, Texas.

h. Plaintiff Thomas Ellis is an adult resident citizen of Cameron County, Texas.

i. Plaintiff Mable Hardaway is an adult resident citizen of Gonzales County, Texas.

j. Plaintiff Jose Campos is an adult resident citizen of Kleberg County, Texas.

k. Plaintiff Beatrice Escalante is an adult resident citizen of Nueces County, Texas.

l. Plaintiff Eleanor Vargas is an adult resident citizen of Nueces County, Texas.

m. Plaintiff Cecilia Rodriguez is an adult resident citizen of Nueces County, Texas.

n. Plaintiff Anna Jeffries is an adult resident citizen of Nueces County, Texas.

o. Plaintiff Jose Quinones is an adult resident citizen of Nueces County, Texas.

p. Plaintiff Dianne I. Garcia is an adult resident citizen of Nueces County,

Texas.

q. Plaintiff Sylvia Camacho is an adult resident citizen of San Patricio County, Texas.

r. Plaintiff Ascencion Dominguez is an adult resident citizen of Starr County, Texas.

s. Plaintiff Felipa Garcia is an adult resident citizen of Starr County, Texas.

t. Plaintiff Aurora Gonzalez is an adult resident citizen of Starr County, Texas.

u. Plaintiff Maximiliano Perez on behalf of the Estate of Margarita Perez is an adult resident citizen of Starr County, Texas.

v. Plaintiff Maria Mutz is an adult resident citizen of Webb County, Texas.

w. Plaintiff Dorothy Cook is an adult resident citizen of Wilson County, Texas.

2. The Defendants and their addresses are:

a. Defendant, PARKE-DAVIS, A division of the Warner-Lambert Company, (hereafter referred to as "Parke-Davis"), may be served with process by Certified Mail, Return Receipt Requested, Delivery Restricted to addressee, at its principal offices at 201 Tabor Road, Morris Plains, New Jersey 07950, or by serving its registered agent, Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

b. WARNER-LAMBERT COMPANY (hereinafter referred to as Warner-Lambert) is a Delaware Corporation that is doing business in Texas. Defendant's principal offices are at 201 Tabor Road, Morris Plains, New Jersey 07950. Alternatively, Defendant may be served with process herein by serving its

registered agent by Certified Mail, Return Receipt Requested, Delivery Restricted to addressee at Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

c.  SANKYO PARKE-DAVIS is a Joint Venture between Sankyo Pharma and Parke-Davis is a Business Corporation doing business in the State of Texas. This defendant may be served by serving a representative of Defendant by Certified Mail, Return Receipt Requested, Delivery Restricted to addressee, at its principal place of business which its located offices are at 2 Hilton Court, Parsippany, N.J. 07054.

d.  PFIZER, INC. is a Delaware corporation that is doing business in Texas. Defendant's principal offices are at 235 E. 42nd Street, New York, NY 10017. Defendant may be served with process herein by serving its registered agent by Certified Mail, Return Receipt Requested, Delivery Restricted to addressee, at Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Pfizer completed its merger with Warner-Lambert on June 19, 2000. Following the merger, Warner-Lambert became Pfizer's wholly owned subsidiary. Under the plan of merger, all debts, liabilities and duties of Warner-Lambert" became the "debts, liabilities, and duties" of Pfizer.

3.  These defendants will be referred to herein collectively as Defendants.

## JURISDICTION

4.  Plaintiffs' claims are brought solely under Texas law.

5.  The damages suffered and sought to be recovered herein are in excess of the minimum jurisdictional limits of this Court.

6.  Defendants are subject to the *in personam* jurisdiction of the Court by virtue of the

fact that they did and are doing business within the State of Texas and committed a tort in whole or in part in this state against the Plaintiffs, as more fully set forth herein. Further, no diversity jurisdiction exists, in that at least one Plaintiff and at least one Defendant are residents of Texas.

## VENUE

7. The Plaintiffs' cause of action occurred in Texas. The Plaintiffs were provided the diabetes medication, Rezulin, in Texas and they took the prescribed diabetes medications in Texas, and sustained injury as a result thereof in Texas.

## FACTS

8. Plaintiffs were provided Rezulin by the Defendants through their physicians.

9. Prior to taking Rezulin, the Plaintiffs were diagnosed as diabetic, but were otherwise in reasonably stable health, given the nature of their then-existing illness. Since the Plaintiffs took the Defendants' Rezulin drug, they have suffered physical and emotional injuries. In addition, Plaintiffs have suffered economic loss. These injuries were a direct, foreseeable, and proximate result of Plaintiffs intake of the drug, Rezulin.

10. Defendants, Parke-Davis, Warner-Lambert, Pfizer, Inc., Sankyo Pharma, Inc., and Sankyo Parke-Davis, the manufacturers of Rezulin, are in the business of distributing and selling pharmaceuticals, including Rezulin, in the State of Texas.

11. Parke-Davis, Warner-Lambert, Pfizer, Inc., Sankyo Pharma, Inc., and Sankyo Parke-Davis are pharmaceutical companies that manufacture and market prescription medications and over-the-counter medications.

12. Rezulin carries the risk of serious side effects including: (a) hepatic dysfunction; (b) liver failure; (c) jaundice; (d) hepatitis; (e) heart disease, and/or (f) death.

13. There were insufficient studies regarding the safety and efficacy of the drug Rezulin and serious doubts existed as to its safety and its efficacy.

## COUNT ONE
## STRICT LIABILITY TORT

14. Plaintiffs adopt by reference the allegations contained and set forth above.

15. Defendants, at all times relevant hereto, were engaged in the marketing, distribution and sale of Rezulin. Said Defendants are strictly liable in tort to the Plaintiffs for the following reasons:

   a. The Rezulin drug was defective, unsafe and unreasonably dangerous for its intended and/or foreseeable uses.

   b. In designing, manufacturing, distributing and prescribing a pharmaceutical product in such an unreasonably dangerous condition that it was likely to cause harm to users thereof when being used for its intended use.

   c. In distributing and selling said product not accompanied by adequate warnings of the dangers that were known or knowable at the time of marketing.

   d. Defendants knew that Rezulin would be used by the consumer without inspection for defects therein.

   e. Defendants expected and knew that their drug would reach the users and was in fact received by the Plaintiffs without change in the condition in which the drug was first manufactured and sold.

   f. Plaintiffs herein were foreseeable users of the product and used the product in its intended manner and suffered serious harm because of said use.

   g. As a direct and proximate result of the defects of the product herein sold by

these Defendants, Plaintiffs have incurred damages.

## COUNT TWO
## NEGLIGENCE

16. Plaintiffs adopt by reference the allegations contained and set forth above.

17. Defendants are liable to the Plaintiffs for negligence in one or more of the following particulars, which negligence was a proximate or contributing cause of the harm and injuries suffered by the Plaintiffs as follows:

   a. In negligently and carelessly examining, marketing or preparing said drug in such a manner that it was likely to injure the user of said product.

   b. By so carelessly and negligently packaging or distributing said product that the drug was unsafe when it reached the hands of the consuming public, including the Plaintiffs herein.

   c. In negligently and carelessly failing to warn the Plaintiffs of all of the risks associated with the use of said drug.

   d. In negligently and carelessly failing to warn the consuming public of the unreasonably dangerous defects associated with said drug after said Defendants had knowledge of the same, thereby breaching the continuing duty to warn.

   e. In negligently and carelessly failing to adequately test and evaluate said drug prior to placing the same into the general stream of commerce.

18. As a direct and proximate result of the negligence of the Defendants, as set forth herein above, Plaintiffs sustained injuries and damages, as aforesaid.

## COUNT THREE
## BREACH OF IMPLIED WARRANTY

19. Plaintiffs adopt by reference the allegations contained and set forth above.

20. At all times material herein, the Defendants sold and distributed Rezulin and knew the use for which the aforesaid drug was being used by Plaintiffs and impliedly warranted to Plaintiffs that the drug was of merchantable quality and safe for its intended use.

21. Plaintiffs relied upon these Defendants and their judgment in using the aforesaid drug.

22. The Rezulin drug supplied by these Defendants was neither safe for its intended use nor of merchantable quality, as warranted by these Defendants, in that the drug had dangerous side effects.

## COUNT FOUR
## NEGLIGENT MISREPRESENTATION

23. Plaintiffs adopt by reference the allegations contained and set forth above.

24. The Defendants at all times material hereto engaged in a strategy to promote and sell this product. Although these Defendants knew, or should have known, that dangerous risks were associated with the use of the drug, the Defendants proceeded with the manufacture and sale of this drug and permitted it to be advertised, promoted and sold without adequate warnings as to the serious side effects and dangerous risks to the consuming public.

25. Defendants created, financed, supported and participated in advertising campaigns throughout the United States that glamorized the success and safety of Rezulin as, among other things, a "once-a-day" pill that would allow some individuals diagnosed with adult-onset "Type II diabetes to halt injections". They knew about, financed, assisted, supported and traded upon the use of the name Rezulin in order to create consumer demand for the drug. They created, financed and participated in the

publication and distribution of pamphlets, brochures, advertisements and promotional material promoting the medication for use, in the offices of doctors, hospitals and clinics and other health care providers, and to the public through direct consumer marketing. These advertisements and marketing programs contained misrepresentations and omissions of facts that were intended to create in the minds of the consuming public the false sense and feeling that said medication was safe for the control of diabetes with minimum side effects.

26. As part of said strategy, Defendants consciously ignored and understated the health risks associated with Rezulin, including the use of testimonials and the manipulation of statistics to suggest acceptability in the medical and lay community while serious side effects and risks were not identified or publicized in said advertisements. They failed to advise or warn the public, doctors, hospitals, or clinics that there were special risks associated with said medication.

27. Defendants marketing strategy occurred before and continued after the release of critical information by the FDA, the British Medicines Control Agency and reliable reporting agencies, such as the Los Angeles Times. Reports from said agencies strongly linked the Rezulin drug to liver failure and death to a statistically significant number of patients.

28. Defendants continued to market and sell the Rezulin drug even after it was pulled from the market in Great Britain because of its unreasonable risk to users.

29. Defendants negligently failed to warn the public of high risks associated with the use of Rezulin.

30. Each of the Defendants were, therefore, guilty of misrepresentation and omissions of material facts to the Plaintiffs concerning the dangers inherent in said drug.

31. The representations and omissions made by Defendants were material and significant to the Plaintiffs.

32. Defendants failed to exercise reasonable care in marketing said drugs and Plaintiffs reasonably relied on the misrepresentations and omissions of said Defendants and suffered damages as a direct result of their reasonable reliance.

## COUNT FIVE
## FRAUD AND DECEIT

33. Plaintiffs adopt by reference the allegations contained and set forth above.

34. Defendants conspired together to defraud and deceive Plaintiffs and members of the general public in Texas for the purpose of inducing the purchase and consumption of the Rezulin drug.

35. The Defendants knew or should have known that their Rezulin drug was defective and unreasonably dangerous. Notwithstanding this knowledge, Defendants, acting individually and in concert, engaged in a fraudulent advertising, marketing and distribution scheme for their Rezulin drug for the sole purpose of furthering their financial gain.

36. The aforesaid plan or scheme was carried out in substantially the following manner:

   a. Rezulin was falsely and fraudulently marketed and advertised as a safe once a day drug that could result in some people eventually being able to stop using insulin.

   b. The Defendants prepared or caused to be prepared warnings and instructions on the use of Rezulin which were false and misleading. Said warnings and instructions falsely misrepresented the results of clinical trial tests on the Rezulin drug. For instance, the Defendants did not disclose the fact that there

was evidence of significant liver damage and heart disease among the clinical trial participants. The Defendants further failed to disclose the substantial risk of other injuries and death associated with the use of their drug.

c. Defendants falsely and fraudulently represented to physicians, pharmacists and others authorized to dispense the Rezulin drug, Plaintiffs and members of the general public, that despite reports from various sources that the Rezulin drug was unreasonably dangerous to its users, the drug was in fact safe and that the Defendants had ongoing clinical tests which proved that the drug was safe to continue to be used, and that any reports to the contrary were false.

d. Defendants, with the intent to deceive and defraud, failed to inform and advise Plaintiffs and members of the general public that shortly after the Rezulin drug was marketed in Great Britain, in 1997, its sale was suspended and subsequently banned from sale in Great Britain because of the drug's unreasonable danger to the British public.

e. Defendants, with the intent to deceive and defraud, failed to inform and advise Plaintiffs and members of the general public that there were scientists involved as principle investigators in Rezulin diabetes-prevention studies conducted by the National Health Institute, who were acting at the same time as consultants for Warner-Lambert, and whose efforts were financed by the Defendant Warner-Lambert. Some of the scientists were also issued grants by the Defendant Warner-Lambert while acting as "principle investigators" for the Rezulin drug and/or consultants for Parke-Davis and/or Warner-Lambert. None of these important facts were disclosed by the Defendants

when the Rezulin drug was promoted and marketed to Plaintiffs and other members of the general public.

f.  Defendants, with the intent to deceive and defraud Plaintiffs, failed to inform and advise Plaintiffs and members of the general public that the longer Rezulin is taken by a patient, the higher the chance of liver failure.

g.  The Defendants, with the intent to deceive and defraud Plaintiffs, failed to inform and advise Plaintiffs and members of the general public that the defendants presented no evidence, at the time they sought fast-tract review from the FDA, from the clinical trials showing that Rezulin prolonged lives.

h.  Defendants, with the intent to deceive and defraud Plaintiffs, fraudulently originally marketed, and represented that the Rezulin drug had side effects "comparable to placebo."

i.  Defendants, with the intent to deceive and defraud Plaintiffs, fraudulently over the past two and a half years, repeatedly assured that the risk of liver failure to patients was very rare and declining.

j.  Defendants, with the intent to deceive and defraud Plaintiffs, fraudulently represented in June of 1998, that Rezulin did not cause the liver failure and death of a participant in a nationwide clinical trial and further falsely stated that "recent changes in Rezulin labeling which induced new liver monitoring guidelines, have proven effective". At said time, the Defendants knew that the reported liver failures and deaths were steadily increasing.

k.  Defendants, with the intent to deceive and defraud Plaintiffs, fraudulently represented in a "fiction vs. facts" statement in March of 1999, that "most Rezulin-related liver deaths were before the last label change in July, 1998.

      . . the risk for Jaundice and death due to liver failure and transplant substantially decline after six to eight months of therapy." The Defendants knew that each of said statements were false at the time they were made and that they would be relied on by the Plaintiffs and the general public.

l.    Defendants, with the intent to deceive and defraud Plaintiffs, fraudulently failed to inform Plaintiffs and members of the general pubic that their own clinical trials showed substantial adverse health effects to clinical trial patients which were not being disclosed, including liver damage, liver failure, and heart disease. Instead of stating the truth regarding these factors, Defendants continuously misled the Plaintiffs by stating that ongoing "clinical tests" proved that Rezulin was a safe drug.

m.    Defendants in furtherance of their scheme to deceive and defraud the Plaintiffs and other members of the general public failed to disclose that in October, 1996, FDA medical officer John L Gueriguian cited Rezulin's potential to harm the liver in his recommendation not to approve the drug for public consumption.

n.    Defendants, in an effort to cover up and conceal their defective product and the truth about its harm to the health of patients, fraudulently represented to Plaintiffs and the public that Rezulin could be safely taken with regular monitoring of liver functions, while knowing from data and information they had obtained or generated through their own efforts, and information which had been obtained, gathered or produced by the FDA and its medical officer David J. Graham, that the monitoring of liver function through monthly blood tests was insufficient to save them patients from injury and/or sudden death.

o. Defendants, with the intent to deceive, defraud and further their efforts to sell their defective product to Plaintiffs and the general public, falsely promoted Rezulin as a drug whose safety was backed up with clinical tests. Defendants in said promotional efforts withheld information necessary for Plaintiffs to make informed decisions on whether to consume Rezulin. Defendants further fraudulently failed to inform Plaintiffs and the general public that during the two-year period after March 1997, 53 fatalities were linked to the use of Rezulin and of that number, 21 of the deaths were associated with liver failure.

p. Defendant fraudulently withheld from Plaintiffs and the general public the fact that four health insurance carriers as of December, 1999, were denying or restricting coverage for Rezulin because of safety concerns.

q. Defendants fraudulently failed to inform Plaintiffs and the general public that deaths associated with the use of Rezulin persisted despite four FDA sanctioned labeling changes in the recommended use of said drug.

r. Defendants fraudulently failed to inform Plaintiffs and the general public that Rezulin patients are 1,200 times more likely to suffer liver failure than those who take other medications.

s. Defendants fraudulently failed to inform Plaintiffs and the general public that diabetes specialists at the Mayo Clinic had recommended removal of Rezulin for patients because of the Aextra risks associated with the use of Rezulin.

t. Defendants fraudulently failed to inform Plaintiffs and the general public the National Health Institute study of the Rezulin drug was funded in part by Defendant Warner-Lambert with a pledge of $20.3 million dollars in

        exchange for rights to market "any invention arising" from the project, and that Defendant Warner-Lambert in 1998 withdrew the $20.3 million dollar commitment after the National Health Institute dropped Rezulin from its study.

u.    Defendants fraudulently failed to inform Plaintiffs and the general public that a person listed as the sole inventor or co-inventor of Rezulin advocated Rezulin's selection for the National Health Institute's study, while his company accepted a diabetes research grant from Warner-Lambert which could total in excess of $50 million. This association, which went undisclosed by Defendants, was important for Plaintiffs and others using Rezulin to know in order to make informed decisions on whether to use Rezulin.

v.    Defendants fraudulently failed to inform Plaintiffs and the general public that data from their own clinical trials showed that 2.2% of Rezulin users showed liver damage.

37.    As a direct result of the aforesaid scheme devised and agreed upon and participated by Defendants, the Plaintiffs and others in reliance thereon continued to take the Rezulin drug at great risk and damage to their health.

38.    At the time each of the false representations were made by Defendants as stated herein, they were known to be false by the Defendants, and were made for the sole purpose of deceiving and defrauding the Plaintiffs.

39.    As a direct and proximate result of the fraud and deceit by Defendants, Plaintiffs sustained injuries and damages as aforesaid.

**WHEREFORE,** Plaintiffs now bring this action against Defendants herein above named and demand judgment of and against said Defendants, jointly and severally, in an amount sufficient to reasonably fully compensate the Plaintiffs and within the minimal jurisdictional amount of the court and for exemplary damages, pre and post judgment interest and all costs of court.

Respectfully submitted,

GALLAGHER LEWIS DOWNEY & KIM

_____
Michael T. Gallagher
Texas State Bar No. 07586000
John H. Kim
Texas State Bar No. 00784393
700 Louisiana, 40th Floor
Houston, Texas 77002
(713) 222-8080
(713) 222-0066 FAX

ATTORNEYS FOR PLAINTIFFS